UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
WILLIAN BARBOZA,

        Plaintiff,

  -against-

VILLAGE OF LIBERTY;
STEVEN D'AGATA, sued in his individual capacity;
MELVIN GORR, sued in his individual capacity,
ROBERT ZANGLA, sued in his individual capacity,

        Defendants.
--------------------------------------------------------------------X

HON. CATHY SEIBEL

**MEMORANDUM OF LAW**

Case No.:  13 CIV 4067(CS)

---

## MEMORANDUM OF LAW IN SUPPORT OF MOTION

---

Yours, etc.,

DRAKE, LOEB, HELLER, KENNEDY,
GOGERTY, GABA & RODD, PLLC
*Attorneys for Defendants,*
*VILLAGE OF LIBERTY, STEVEN*
*D'AGATA AND MELVIN GORR*
555 Hudson Valley Avenue
Suite 100
New Windsor, New York 12553
Tel. No.:  (845) 561-0550

Of Counsel:

ADAM L. RODD

**TABLE OF CONTENTS**

Page

TABLE OF CASES AND AUTHORITIES..................................................i-v

ARGUMENT:

I.     CASE BACKGROUND..................................................................2

     (A)    OVERVIEW OF FACTS....................................................2

     (B)    OVERVIEW OF CLAIMS ..................................................6

II.    SUMMARY JUDGMENT STANDARD.............................................7

III.   ALL CLAIMS AGAINST DETECTIVE D'AGATA AND OFFICER
     GORR SHOULD BE DISMISSED PURSUANT TO THE DOCTRINE
     OF QUALIFIED IMMUNITY .......................................................7

     (A)    ELEMENTS OF FALSE ARREST AND FIRST AMENDMENT
            RETALIATION CLAIMS AND IMPACT OF PROBABLE
            CAUSE ON VIABILITY OF CLAIMS....................................7

     (B)    QUALIFIED IMMUNITY STANDARDS...............................9

     (C)    DETECTIVE D'AGATA AND OFFICER GORR ARE
            PROTECTED BY QUALIFIED IMMUNITY BASED ON
            THEIR REASONABLE RELIANCE ON THE ADVICE
            OF COUNSEL.................................................................11

     (D)    IT WAS OBJECTIVELY REASONABLE FOR DETECTIVE
            D'AGATA AND OFFICER GORR TO PARTICIPATE IN THE
            ENFORCEMENT OF A CHARGE OF AGGRAVATED
            HARRASSMENT IN THE SECOND DEGREE BASED ON
            THE TERMS OF THE STATUTE ITSELF...............................12

     (E)    THE LEGALITY OF THE CONDUCT OF DETECTIVE
            D'AGATA AND OFFICER GORR WAS SUPPORTED
            BY THE ACTIONS OF JUDGE ROURKE.............................14

IV.   PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM IS
     WITHOUT MERIT.................................................................15

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC
555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553
PHONE: 845-561-0550

V.      THE PLAINTIFF'S FAILURE TO TRAIN CLAIM IS WITHOUT
        MERIT……………………………………………………………..18

VI.     ALL CLAIMS AGAINST POLICE OFFICER GORR SHOULD BE
        DISMISSED…………………………………………………………22

CONCLUSION………………………………………………………………23

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC
555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553
PHONE: 845-561-0550

## <u>TABLE OF CASES & AUTHORITIES</u>

Cases:

<u>Amore v. Novarro</u>, 624 F. 3d 522 (2d Cir. 2010)

<u>Anderson v. City of New York</u>, 817 F.Supp. 2d 77 (E.D.N.Y. 2011)

<u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, at 249-250, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986)

<u>Ashcroft v. al-Kidd</u>, _ U.S. _, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)

<u>Bernard v. United States</u>, 25 F.3d 98, 102–03 (2d Cir.1994)

<u>Calamia v. City of New York</u>, 879 F.2d 1025, 1032 (2d Cir.1989)

<u>Caldarola v. Calabrese</u>, 298 F.3d 156, 162 (2d Cir.2002)

<u>City of Canton v. Harris</u>, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)

<u>Connick v. Thomson</u>, —— U.S. ——, ——, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011)

<u>Connecticut ex rel. Blumenthal v. Crotty</u>, 346 F. 3d 84 at103 (2d Cir. 2003)

<u>Croft v. Greenhope Services for Women, Inc.</u>, 2013 WL 6642677 (S.D.N.Y. 2013)

<u>Curley v. Village of Suffern</u>, 268 F.3d 65, 73 (2d Cir. 2001)

<u>Dale v. Kelley</u>, 908 F. Supp. 125, 137-38 (W.D.N.Y. 1995)

<u>Dallow v. Prudential Residential Services, L.P.</u>, 22 F.3d 1219 (2d Cir. 1994)

<u>De Michele v. City of New York</u>, 2012 WL 4354763 (S.D.N.Y.)

<u>Doninger v. Niehoff</u>, 642 F. 3d 334, 353 (2d Cir. 2011)

<u>Donovan v. Briggs</u>, 250 F. Supp. 2d 242 (W.D.N.Y. 2003)

<u>Dorsett v. County of Nassau</u>, 732 F.3d 157 (2d Cir. 2013)

<u>Fabrikant v. French</u>, 691 F.3d 193, 215 (2d. Cir. 2012)

<u>Golino v. City of New Haven</u>, 950 F.2d 864, 870 (2d Cir.1991)

<u>Golodner v. City of New London</u>, 443 F. App'x 622, 624 (2d Cir. 2011)

<u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S.Ct.2727, 73 L. Ed. 2d 396 (1982)

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC
555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553
PHONE: 845-561-0550

Jackson v. Seewald, 2013 WL 149341 (S.D.N.Y.)

Johnson v. City of New York, 2011 WL 666161 at 4 (S.D.N.Y.)

Lacey v. Yates County,--- F.Supp.2d ----, 2014 WL 2930466 (W.D.N.Y. 2014)

Lennon v. Miller, 66 F.3d 416, 420–21 (2d Cir.1995)

Lemon v. Kurtzman, 411 U.S. 192, 208, 93 S. Ct. 1463, 36 L. Ed. 151 (1973)

Loria v. Gorman, 306 F.3d 1271, 1288 (2d Cir.2002)

Martinez v. Simonetti, 202 F.3d 625 at 634 (2d Cir. 2000)

Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)

Messerschmidt v. Millender, _ U.S. _, 132 S.Ct. 1235, 1249, 182 L.Ed. 2d 47 (2012)

Messerschmidt v. Millender, 132 S.Ct. at 1245 (2012)

Miller v. County of Nassau, 2013 WL 1172833(E.D.N.Y.)

Mitchell v. County of Nassau, 786 F.Supp.2d 545(E.D.N.Y. 2011)

Mitchell v. Home, 377 F.Supp.2d 361(S.D.N.Y. 2005)

Mohammed v. City of Peekskill, 2008 WL 4525367 (S.D.N.Y.)

Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)

Parker v. City of New York, 2010 WL 1693007 (E.D.N.Y. 2010)

Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)

People v. Golb, 2014 WL 1883943 (N.Y. 2014)

Provost v. City of Newburgh, 262 F. 3d 146, 160 (2d Cir. 2001)

Redd v. City of Enter., 140 F.3d 1378, 1283 (11th Cir. 1998)

Reichle v. Howards, —— U.S. ——, 132 S.Ct. 2088, 2094, 182 L.Ed.2d 985 (2012)

Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir. 1995)

Wernick v. Federal Reserve Bank of New York, 91 F.3d 379 (2d Cir. 1996)

Williams v. City of New York, 2003 WL 22434151 (S.D.N.Y)

iv

<u>Van Dunk v. Brower</u>, 2013 WL 5970172 (S.D.N.Y.)

<u>Statutes:</u>

FRCP Rule 56
FRCP 56(c)
Penal Law §240.30
Penal Law §240.30(1)(a)
Vehicle and Traffic Law §1180(d)

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD ᴘʟʟᴄ
555 Hudson Valley Avenue, Suite 100, New Windsor, New York 12553
Phone: 845-561-0550

I.    <u>CASE BACKGROUND</u>

(A)    <u>OVERVIEW OF FACTS</u>

The plaintiff, Willian Barboza (hereinafter "plaintiff") is a 23 year old male, and at all relevant times, was a resident of the State of Connecticut. On May 4, 2012, while driving a vehicle on State Route 17 in the Town of Liberty, the plaintiff received a speeding ticket from a New York State Trooper. Specifically, the plaintiff was ticketed for traveling at 82 mph in a 65 mph zone, in violation of Vehicle and Traffic Law §1180(d).

On June 3, 2012 the plaintiff mailed his guilty plea under Vehicle and Traffic Law §1180(d) to the Town of Liberty Justice Court. Later, and on or about July 23, 2012, the Town of Liberty Justice Court mailed to the plaintiff a form indicating the fine and surcharge to be paid pursuant to his guilty plea. The subject form directed that payment, along with the form, be returned to the Town of Liberty Justice Court on or before August 20, 2012.

On August 17, 2012, the plaintiff filled out the subject payment form, and wrote on the form the words: "Fuck your shitty town bitches." This form, containing the plaintiff's handwriting, was then mailed by the plaintiff on or about August 17, 2012, and received by the Town of Liberty Justice Court on or about August 20, 2012. Upon receipt, the form containing the plaintiff's handwriting was initially read by one of the Court Clerks at the Town of Liberty Justice Court.

All of the Court Clerks who work at the Town of Liberty Justice Court were female. Shortly after the form containing the plaintiff's handwriting was received, the subject form was brought to the attention of Town of Liberty Town Justice Brian Rourke

08977-65604

(hereinafter "Judge Rourke") by one of the female Court Clerks. Judge Rourke, based upon his communications with the Justice Court Clerks, as well as his own review of the plaintiff's writing, believed that the plaintiff's comments were threating in nature, and that the plaintiff's actions may have violated one or more of the provisions of New York's Penal Law. Based on these concerns, Judge Rourke contacted an Assistant District Attorney employed by the Sullivan County District Attorney's Office – to wit, Assistant District Attorney Robert Zangla (hereinafter "ADA Zangla"), and asked ADA Zangla to investigate and look into the issue.

As of 2012, ADA Zangla had been assigned to prosecute cases at the Town of Liberty Justice Court, and had been working at the Sullivan County District Attorney's Office for approximately 14 years. ADA Zangla was familiar with the Aggravated Harassment in the Second Degree statute (Penal Law §240.30), and had prosecuted individuals under that statute on numerous prior occasions.

After being asked by Judge Rourke to investigate whether the plaintiff's conduct violated the Penal Law, ADA Zangla conferred with another District Attorney at his office – to wit, Meagan Galligan, Esq., as well as with the Sullivan County District Attorney himself – James Farrell, Esq. All concurred that the plaintiff's handwritten comments, which were mailed by the plaintiff to the Town of Liberty Justice Court on August 17, 2012, amounted to conduct that is prohibited by Penal Law §240.30(1)(a).

Later, on September 26, 2012, Judge Rourke sent the plaintiff a letter indicating that the plaintiff's payment of his fine and surcharge by mail would not be accepted. Further, Judge Rourke's September 26, 2012 letter also ordered the plaintiff to appear back in court on October 18, 2012 for a personal appearance, and warned the plaintiff

that his failure to appear may result in his arrest.

The Village of Liberty Police Department provides police staffing for security purposes at the Town of Liberty Justice Court when that Court is in session.  On October 18, 2012, Steven D'Agata (hereinafter "Detective D'Agata"), a Detective employed by the Village of Liberty Police Department, was scheduled to provide police security support for the Town of Liberty Justice Court on that date.  Prior to the October 18, 2012 date, Detective D'Agata had absolutely no contact with or knowledge of any of the preceding events involving the plaintiff, Judge Rourke, and ADA Zangla.

On the October 18, 2012 date, and before the commencement of the  2 p.m. call of the criminal calendar, ADA Zangla approached Detective D'Agata and requested that Detective D'Agata draft an Information charging the plaintiff with Aggravated Harassment in the Second Degree pursuant to Penal Law §240.30(1)(a).  ADA Zangla advised Detective D'Agata that the plaintiff had mailed threatening comments to the Court Clerks at the Town of Liberty Justice Court, and that this conduct amounted to a violation of Penal Law §240.30(1)(a).  ADA Zangla also instructed Detective D'Agata that after the plaintiff was charged, that the plaintiff was to be arrested.

Detective D'Agata complied with ADA Zangla's directive and, prior to the call of the calendar, drafted an Information charging the plaintiff with Aggravated Harassment in the Second Degree.  After the Information was drafted by Detective D'Agata, he provided the Information to ADA Zangla.  ADA Zangla reviewed and approved the Information.  In addition, based on ADA Zangla's instruction for the plaintiff to be arrested after he was charged, Detective D'Agata asked Officer Gorr (another employee at the Village of Liberty Police Department) to assist him in the arrest of the plaintiff.

Officer Gorr agreed to do so.

Upon the plaintiff's case being called by Judge Rourke at the time of the October 18, 2012 calendar call, ADA Zangla handed Judge Rourke the Information charging the plaintiff with Aggravated Harassment in the Second Degree. Judge Rourke reviewed the Information, and did not discern anything improper about its contents. After reviewing the Information, Judge Rourke, from the bench, reprimanded the plaintiff about the content of the plaintiff's handwritten note sent to the Town of Liberty Justice Court. After reprimanding the plaintiff, Judge Rourke then personally served the plaintiff with the Information charging the plaintiff with Aggravated Harassment in the Second Degree, and advised the plaintiff that he was going to be arrested.

After Judge Rourke served the Information on the plaintiff, and advised of the arrest, Detective D'Agata, with the assistance of Officer Gorr, handcuffed the plaintiff, and brought the plaintiff to the Village of Liberty Police Department - which was located next door to the Town of Liberty Justice Court - for processing. On that same date, the plaintiff was later arraigned before another Judge at the Town of Fallsburg Justice Court (because Judge Rourke had recused himself from handling further proceedings, after the arrest). After arraignment in Fallsburg, the plaintiff was transported to the Sullivan County Jail, where the plaintiff posted $200.00 bail and was then released on the same October 18, 2012 date.

Subsequently, and in response to a motion to dismiss served on behalf of the plaintiff, Town Justice Kalter of the Town of Fallsburg Justice Court, by his Decision dated March 22, 2013, dismissed the underlying Aggravated Harassment in the Second Degree charge. Judge Kalter's Decision noted that while the plaintiff's conduct "might

seem to fall within the four corners of" Penal Law §240.30(1)(a), he found that the plaintiff's handwritten communications could not be interpreted as a threat sufficient to support a violation of this statute.

(B)    OVERVIEW OF CLAIMS

The plaintiff commenced suit via the filing of a Complaint with this Court on June 13, 2013 (Exhibit "A").[1]  The plaintiff's initial Complaint, which named, as defendants, only Detective D'Agata and Officer Gorr, asserted causes of action sounding in false arrest, malicious prosecution, and First Amendment retaliation.  Thereafter, and on February 7, 2014, the plaintiff filed an Amended Complaint, which added the Village of Liberty and Robert Zangla as defendants (Exhibit "C").  The plaintiff's Amended Complaint pled causes of action based upon false arrest and First Amendment retaliation, but dropped the malicious prosecution cause of action.[2]  With respect to the Village of Liberty, the plaintiff's Amended Complaint asserted that it is independently liable for the alleged unlawful arrest of the plaintiff at issue based on a "failure to train" theory. Thereafter, the plaintiff filed a Second Amended Complaint with this Court on or about May 18, 2014 (Exhibit "D").  The plaintiff's Second Amended Complaint purports to provide further details relating to the plaintiff's claim that the Village of Liberty should be held liable for the subject October 18, 2012 arrest pursuant to a "failure to train" theory.

---

[1] All Exhibits referenced herein are attached to the document entitled "Exhibit List Submitted by Village of Liberty, Steven D'Agata and Melvin Gorr," which said document is included in the defendants' moving submissions.

[2] It is clear that the plaintiff chose not to pursue a cause of action sounding in malicious prosecution based on the fact that discovery demonstrated that the underlying charge was in fact "initiated" by Judge Rourke. Specifically, it was Judge Rourke who elected to bring the challenged communications at issue on the part of the plaintiff to the Sullivan County District Attorney (Exhibit "H" at p. 32 , lines 3 to 15).  In order to hold a defendant liable on a cause of action sounding in malicious prosecution, it is of course, necessary to establish that the defendant "initiated" the proceedings. Parker v. City of New York, 2010 WL 1693007 (E.D.N.Y. 2010)(in order to prevail on a malicious prosecution cause of action a plaintiff must establish, inter alia, that the defendant initiated the criminal proceeding).

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted if all of the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c).  On a motion for summary judgment, the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Dallow v. Prudential Residential Services, L.P., 22 F.3d 1219 (2d Cir. 1994).  Once the moving party establishes its prima facie showing of entitlement to summary judgment, the burden shifts to the non-movant to come forward with specific facts showing that there are genuine issues of fact for trial.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).  In this regard, the mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient for purposes of defeating a motion for summary judgment, as there must be evidence on which the jury could reasonably find for the non-movant.  Wernick v. Federal Reserve Bank of New York, 91 F.3d 379 (2d Cir. 1996).  Further, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, at 249-250, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986).

## III.   ALL CLAIMS AGAINST DETECTIVE D'AGATA AND OFFICER GORR SHOULD BE DISMISSED PURSUANT TO THE DOCTRINE OF QUALIFIED IMMUNITY

### (A)    ELEMENTS OF FALSE ARREST AND FIRST AMENDMENT RETALIATION CLAIMS AND IMPACT OF PROBABLE CAUSE ON VIABILITY OF CLAIMS

With respect to Detective D'Agata and Officer Gorr, the plaintiff asserts that their

participation in the subject October 18, 2012 arrest was unlawful, and that they should be found personally liable, pursuant §1983, under theories sounding in false arrest and First Amendment retaliation.

Preliminarily, in order to establish a cause of action for false arrest under §1983, a plaintiff must show that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. Mitchell v. Home, 377 F.Supp.2d 361(S.D.N.Y. 2005). In order to state a cause of action for First Amendment retaliation, a plaintiff must show that: (1) he has an interest protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by the plaintiff's exercise of his First Amendment rights; and (3) the defendant's actions effectively chilled the exercise of his First Amendment rights. Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). Importantly, the existence of probable cause is a complete defense to both a false arrest claim and a First Amendment retaliation claim. Croft v. Greenhope Services for Women, Inc., 2013 WL 6642677 (S.D.N.Y. 2013).

In the case at bar, the plaintiff's core contention is that the written comments he mailed to the Town of Liberty Justice Court could not be correctly interpreted to support a claim of Aggravated Harassment in the Second Degree as set forth in Penal Law §240.30(1)(a). To the extent that the plaintiff claims that there was no probable cause supporting the charge of Aggravated Harassment in the Second Degree, he alleges that Detective D'Agata's and Officer Gorr's participation in the arrest of the plaintiff on that charge warrants the imposition of personal liability against them, despite the fact that ADA Zangla and Judge Rourke authorized and approved the challenged actions. The

unique and compelling circumstances of this matter, however, foreclose the imposition of

personal liability against Detective D'Agata and Officer Gorr pursuant to the doctrine of

qualified immunity.

### (B)   QUALIFIED IMMUNITY STANDARDS

Under the doctrine of qualified immunity "(g)overnment officials performing

discretionary functions generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818,

102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  When a government official exercises

discretionary functions, as Village police personnel did here, the law recognizes that a

governmental official is entitled to "breathing room" in carrying out his job functions,

and will be protected from discretionary decisions that are reasonable, even if it turns out

that same were mistaken in terms of an implicated Constitutional principle.

Messerschmidt v. Millender, _ U.S. _, 132 S.Ct. 1235, 1249, 182 L.Ed. 2d 47 (2012)

("Qualified immunity gives government officials breathing room to make reasonable but

mistaken judgments")(internal quotation marks omitted).  In this regard, the qualified

immunity doctrine protects "all but the plainly incompetent or those who knowingly

violate the law." Ashcroft v. al-Kidd, _ U.S. _, 131 S.Ct. 2074, 179 L.Ed.2d 1149

(2011)(internal quotation marks omitted).  As long as it can be said that reasonable

officials could disagree about the constitutionality of a particular decision, summary

judgment is appropriate.  Mitchell v. County of Nassau, 786 F.Supp.2d 545

(E.D.N.Y. 2011)(a police officer is immune from such suit if either it was objectively

reasonable for the officer to believe that probable cause existed, or officers of reasonable

competence could disagree on whether the probable cause test was met).

The courts have described qualified immunity as a forgiving standard, which protects all but the plainly incompetent and those who knowingly violate the law. Provost v. City of Newburgh, 262 F. 3d 146, 160 (2d Cir. 2001). Only where an officer's judgment is "so flawed that no reasonable officer would have made a similar choice," is the denial of qualified immunity appropriate. (Provost, supra 262 F. 3d at 160).

In undertaking an analysis of the application of qualified immunity, the Court will consider those facts that were available to a police officer, or which could have been reasonably perceived by him, at the moment that he engaged in the challenged conduct. Williams v. City of New York, 2003 WL 22434151 (S.D.N.Y.). In this regard, even if it is determined that "probable cause" did not in fact exist to support a charge or arrest, the existence of "arguable probable cause" will operate to provide an officer with qualified immunity. Van Dunk v. Brower, 2013 WL 5970172 at 12 (S.D.N.Y.)("[e]ven if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can demonstrate that 'arguable probable cause' supported the arrest"). Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991); see also, Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir.2002) ("[W]here an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity") (citations omitted). See also Lennon v. Miller, 66 F.3d 416, 420–21 (2d Cir.1995) ("An officer's actions are objectively

unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances."); <u>Jackson v. Seewald</u>, 2013 WL 149341 at 10 (S.D.N.Y.) ("even when there is no probable cause for an arrest, an officer who makes an arrest... is entitled to qualified immunity if officers of reasonable competence in the same circumstances and with the same knowledge could disagree whether probable cause existed").

In the case at bar, it is not disputed that ADA Zangla, upon the request of Judge Rourke, determined that the handwritten comments on the part of the plaintiff *did* amount to a violation of Penal Law §240.30(1)(a). It is also not disputed that ADA Zangla thereafter directed Detective D'Agata to: (a) draft an Information charging the plaintiff with Aggravated Harassment in the Second Degree, and (b) arrest the plaintiff based upon this Penal Law violation. Further, after ADA Zangla approved the Information that he directed Detective D'Agata to draft, Judge Rourke – who was the individual who in fact initiated the subject prosecution: (a) reviewed the Information handed to him by ADA Zangla; (b) reprimanded the plaintiff, from the bench, for the comments the plaintiff mailed to the Town of Liberty Justice Court; (c) served the plaintiff with the Information charging the plaintiff with Aggravated Harassment in the Second Degree; and (d) advised the plaintiff that he would be arrested.

Here, it is clear that it was objectively reasonable for both Detective D'Agata and Officer Gorr to believe that the plaintiff's conduct did violate Penal Law §240.30(1)(a) based upon the non-disputed facts and circumstances presented in this case.

    (C)      <u>DETECTIVE D'AGATA AND OFFICER GORR ARE PROTECTED BY QUALIFIED IMMUNITY BASED ON THEIR REASONABLE RELIANCE ON THE ADVICE OF COUNSEL</u>

With respect to the directives of ADA Zangla communicated to Detective D'Agata, it would fundamentally unfair to hold either Detective D'Agata (or Officer Gorr) personally liable for their actions in simply complying with ADA Zangla's instructions to charge and arrest the plaintiff - especially where ADA Zangla expressly advised Detective D'Agata that the plaintiff's conduct *was* unlawful, and *did* support the charge and arrest. The law recognizes that when a police officer acts pursuant to the guidance and instruction of counsel, he should be afforded qualified immunity from suit in the face of a challenge that the officer's conduct, which was undertaken upon the advice of counsel, in fact amounted to a Constitutional wrong. See, Dale v. Kelley, 908 F. Supp. 125, 137-38 (W.D.N.Y. 1995) (noting that police officers must be able to rely on advice of prosecutors, and holding that defendant was entitled to qualified immunity where he was "acting at the direction of an Assistant District Attorney"), aff'd, 95 F.3d 2 (2d Cir. 1996); Donovan v. Briggs, 250 F. Supp. 2d 242 (W.D.N.Y. 2003) ("… Peglow was entitled to rely, at least in part, on Brigg's opinion that probable cause existed. As a practical matter, police officers must be able to rely on the advice of prosecutors. The judicial system depends upon this reliance") (internal citations and internal quotations omitted); Mohammed v. City of Peekskill, 2008 WL 4525367 (S.D.N.Y.) ("[n]ormally, it is reasonable for law enforcement officers to rely on a prosecutor's advice in bringing charges").

    (D)    IT WAS OBJECTIVELY REASONABLE FOR DETECTIVE D'AGATA AND OFFICER GORR TO PARTICIPATE IN THE ENFORCEMENT OF A CHARGE OF AGGRAVATED HARRASSMENT IN THE SECOND DEGREE BASED ON THE TERMS OF THE STATUTE ITSELF

Penal Law §240.30(1)(a) provides, in pertinent part, that: "A person is guilty of

aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he or she... communicates with a person, anonymously or otherwise... by mail... in a manner likely to cause annoyance or alarm."

In this case, not only are Detective D'Agata and Officer Gorr entitled to qualified immunity based upon their clear reasonable reliance on the directives of counsel, as specified above, their reasonable belief that their actions were lawful, and thus, at a minimum, based upon arguable probable cause, is supported by the language of Penal Law §240.30(1)(a) itself.

As a starting proposition, the law is settled that duly enacted state laws are generally presumed to be Constitutional. Lemon v. Kurtzman, 411 U.S. 192, 208, 93 S. Ct. 1463, 36 L. Ed. 151 (1973). In this case, Penal Law §240.30(1)(a) was duly enacted, and on the books, as of October of 2012.[3] Because the subject statute remained valid and on books as of the date of the charge and arrest, Detective D'Agata and Officer Gorr acted in an objectively reasonable manner by participating in the arrest of the plaintiff under this statute, especially where, as here, same was directed and approved by both ADA Zangla and Judge Rourke. See, Connecticut ex rel. Blumenthal v. Crotty, 346 F. 3d 84 at103 (2d Cir. 2003) ("... State officials are charged to enforce laws until and unless they are declared unconstitutional and that the enactment of a law forecloses speculation by enforcement officers concerning its constitutionality – with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws")(internal quotations and citations omitted). See also, Amore v. Novarro, 624 F. 3d 522 (2d Cir. 2010) ("To spare police officers the unenviable

---

[3] In point of fact, it was not until the Court of Appeals decided People v. Golb, 2014 WL 1883943 (N.Y. 2014) on May 13, 2014, that the Court of Appeals found the statute itself to be unconstitutional. The Court of Appeals did so because it found that the statute was overbroad.

choice between failing to enforce the law and risking personal liability for enforcing what they reasonably, but mistakenly, think is the law, we generally extend qualified immunity to an officer for an arrest made pursuant to a statute that is "on the books," so long as the arrest was based on probable cause that the statute was violated").

(E)    THE LEGALITY OF THE CONDUCT OF DETECTIVE D'AGATA AND OFFICER GORR WAS SUPPORTED BY THE ACTIONS OF JUDGE ROURKE

It was objectively reasonable for Detective D'Agata and Officer Gorr to believe that their participation in the charge and arrest of the plaintiff was lawful based on the actions of Judge Rourke on October 18, 2012.  As referenced herein, after ADA Zangla approved the Information that he directed Detective D'Agata to draft, ADA Zangla handed the Information to Judge Rourke just prior to the subject arrest.  At that time, in the presence of both Detective D'Agata and Officer Gorr, Judge Rourke: (a) reviewed the Information handed to him by ADA Zangla; (b) reprimanded the plaintiff, from the bench, for the comments the plaintiff mailed to the Town of Liberty Justice Court; (c) served the plaintiff with the Information charging the plaintiff with Aggravated Harassment in the Second Degree; and (d) advised the plaintiff that he would be arrested.

Under the foregoing circumstances, there can be no reasonable dispute that Judge Rourke's actions, from the bench, could only be understood by Detective D'Agata and Officer Gorr as a clear judicial approval of the subject charge and arrest.  In this regard, the law recognizes that qualified immunity should attach in circumstances of express judicial approval of a search or seizure – for example, by the issuance of a Warrant.  See, Messerschmidt v. Millender, 132 S.Ct. at 1245 (2012)("[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a

neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in "objective good faith"). The same policy principle articulated in Messerschmidt, as it relates to qualified immunity, should apply here. That is, it would be nonsensical to find that Detective D'Agata or Officer Gorr could not have reasonably believed their conduct was lawful where, as here, the conduct they are now being sued for was clearly approved by Judge Rourke.

IV.   PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM IS WITHOUT MERIT

In the case at bar, the plaintiff claims that subject October 18, 2012 arrest at issue was undertaken for reasons based on retaliatory animus towards the plaintiff's speech, and therefore violated his free speech rights protected by the First Amendment, and made actionable under §1983. In order to establish a viable claim of First Amendment retaliation under §1983, a plaintiff must prove that: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

As an initial matter, although there is no dispute that the plaintiff, as a general matter, does have an interest protected by the First Amendment to engage in non-threatening speech, the plaintiff cannot show that the actions on the part of Detective D'Agata, Officer Gorr or the Village of Liberty were undertaken *because of* the exercise of the plaintiff's claimed First Amendment rights.

In order to satisfy the second prong of a First Amendment retaliation claim, the Second Circuit has held that "(s)pecific proof of improper motivation is required in order

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC
555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553
PHONE: 845-561-0550

15

for plaintiff to survive summary judgment on a First Amendment retaliation claim." Id,
268 F.3d at 73. However, where, as here, probable cause does exist for the challenged
action on the part of a police officer, a court will "not examine the officer's underlying
motive in arresting and charging the plaintiff." Singer v. Fulton County Sheriff, 63 F.3d
110, 120 (2d Cir. 1995). This is so because the existence of probable cause will defeat a
First Amendment retaliation claim based on the claim that the challenged conduct was
based upon a retaliatory motive. Fabrikant v. French, 691 F.3d 193, 215 (2d. Cir. 2012)
("[t]he existence of probable cause will defeat a claim of malicious prosecution and
unreasonable search and seizure"...and "will also defeat a First Amendment claim that is
premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory
motive, in an attempt to silence her"); see also, Golodner v. City of New London, 443 F.
App'x 622, 624 (2d Cir. 2011)("[t]he existence of probable cause is a complete defense
to a claim of retaliatory arrest").

Indeed, even arguable probable cause will suffice to defeat a First Amendment
retaliation claim. Anderson v. City of New York, 817 F.Supp. 2d 77 (E.D.N.Y. 2011)("If
the officer had probable cause or arguable probable cause to arrest the plaintiff, then we
will not examine the officer's underlying motive"(internal quotation and citation
omitted); see also, Redd v. City of Enter., 140 F.3d 1378, 1283 (11th Cir. 1998)("Because
we hold that the officers had arguable probable cause to arrest Anderson for disorderly
conduct, we must hold that the officers are also entitled to qualified immunity on
plaintiffs' First Amendment claims").

In this case, and as noted in Point III, above, Detective D'Agata and Officer Gorr
had, a minimum, arguable probable cause to arrest the plaintiff based on the

circumstances, advice and facts contemporaneously made known to them at the time of the October 18, 2012 arrest at issue. Specifically, the record establishes, beyond dispute, that the arrest at issue was undertaken by Detective D'Agata, with the assistance of Officer Gorr, by virtue of ADA Zangla's advice to Detective D'Agata that the plaintiff's conduct did constitute the offense of Aggravated Harassment in the Second Degree, and of course, ADA Zangla's instructions to Detective D'Agata to draft an Information charging the plaintiff with this offense, and then, to arrest him. The record further establishes, beyond dispute, that the Information containing this charge was then reviewed by Judge Rourke, from the bench, who then served the Information on the plaintiff, with the statement (by Judge Rourke) that the plaintiff was then going to be arrested. As noted in Point III, above, these non-disputed facts and circumstances provided, at a minimum, arguable probable cause for the officers to believe that the arrest they were asked to effectuate was lawful. The existence of this arguable probable cause renders the plaintiff's First Amendment retaliation claim non-viable. Reichle v. Howards, — U.S. ——, 132 S.Ct. 2088, 2094, 182 L.Ed.2d 985 (2012) ("[A] plaintiff cannot state a claim of retaliatory prosecution in violation of the First Amendment if the charges were supported by probable cause."); Lacey v. Yates County,--- F.Supp.2d ----, 2014 WL 2930466 (W.D.N.Y. 2014)("[i]t is well-established in this Circuit that for purposes of a First Amendment retaliation claim against a law enforcement officer, if the officer either had probable cause or was qualifiedly immune from subsequent suit [due to an objectively reasonable belief that he had probable cause], then [the Court] will not examine the officer's underlying motive in arresting and charging the plaintiff")(internal quotations omitted).

Finally, with respect to the third requisite element of a claim sounding in First Amendment retaliation – to wit, that the defendants' actions effectively "chilled" the exercise of the plaintiff's First Amendment rights – the plaintiff plainly cannot demonstrate any such effect. Specifically, after the subject arrest at issue, the plaintiff took it upon himself to lodge a multitude personal and vituperative attacks on the integrity of those involved in his prosecution. As just one example, in the plaintiff's November 28, 2012 post-arrest letter to ADA Zangla, the plaintiff accused ADA Zangla of acting like "a butt hurt little bitch" and further wrote that "I hope this letter finds you in terminally ill health, stuck in a loveless marriage and full of self loathing every time you catch a glimpse of yourself in the mirror." Exhibit "N." Because the plaintiff's actions hardly "chilled" the plaintiff's speech (in fact, it seem to have strongly encouraged it), the plaintiff cannot rely on any alleged "chilling" of his speech to make out his First Amendment retaliation claim. [4]

V.    THE PLAINTIFF'S FAILURE TO TRAIN CLAIM IS WITHOUT MERIT

The plaintiff, in his Second Amended Complaint, seeks to hold the Village of Liberty ("Village") liable for the actions of Detective D'Agata and Officer Gorr in participating in the claimed unlawful arrest of the plaintiff which occurred on October 18, 2013 pursuant to the theory that it failed to adequately train its police officers. The plaintiff's claim in this regard is entirely without merit in accordance with the governing law.

---

[4] The defendants acknowledge that a First Amendment retaliation claim can be established by proof of either "chilled" speech *or* some other "concrete harm" – such as a false arrest. See, Dorsett v. County of Nassau, 732 F.3d 157 (2d Cir. 2013). However, and as noted above, even if the arrest at issue here can operate to satisfy the "concrete harm" showing necessary to sustain a First Amendment retaliation claim, the claim otherwise fails since, with respect to the facts and circumstances known and communicated to Detective D'Agata and Officer Gorr at the time of the arrest, there was, at a minimum, arguable probable cause supporting the arrest. The existence of this probable cause precludes the viability of the plaintiff's First Amendment retaliation claim. Fabricant, supra.

DRAKE LOEB HELLER KENNEDY GOGERTY GABA & RODD PLLC
555 HUDSON VALLEY AVENUE, SUITE 100, NEW WINDSOR, NEW YORK 12553
PHONE: 845-561-0550

18

At the outset, the law is clear that the Village may not be held liable for the alleged Constitutional torts of its employees under a theory of respondeat superior. Pembaur v. City of Cincinnati, 475 U.S. 469, 478, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Instead, in order to hold a municipality liable for the violation of a plaintiff's Constitutional rights, it must be shown that the violation was the direct result of that municipality's "policy" or "custom." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Here, the plaintiff attempts to establish that the Village's failure to train its officers, with respect to Penal Law §240.30 specifically, amounted to municipal "policy" or "custom" that purportedly "caused" the arrest at issue.

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thomson, ⎯⎯ U.S. ⎯⎯, ⎯⎯, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). In this regard, "(a) mere failure to train is insufficient to establish municipality liability." Johnson v. City of New York, 2011 WL 666161 at 4 (S.D.N.Y.). Instead, in order for a municipality to be held liable under a failure to train theory, it must be shown that not only was there in fact a failure to train, but that the lack of training "amount(ed) to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

The "deliberate indifference" standard is a "stringent standard of fault." Connick, 131 S.Ct. at 1360 (internal quotation marks and citation omitted). In order to show the requisite "deliberate indifference," a plaintiff must show a pattern of similar constitutional violations by untrained employees of the municipality in order for a failure to train to amount to an actionable "policy or custom." Connick, 131 S.Ct. 489, U.S. at

1360.  Merely showing that additional training might have been helpful to avoid a Constitutional violation is insufficient to show "deliberate indifference." Canton, supra, at 391, 109 S.Ct. 1197 ("[P]rov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" will not suffice).  Likewise, the mere fact that the risk of a Constitutional violation was "obvious" absent additional training also does not suffice to establish "deliberate indifference." Connick, 131 S.Ct. at 1365 ("The District Court and the Court of Appeals panel erroneously believed that Thompson had proved deliberate indifference by showing the "obviousness" of a need for additional training. They based this conclusion on Connick's awareness that (1) prosecutors would confront Brady issues while at the district attorney's office; (2) inexperienced prosecutors were expected to understand Brady's requirements; (3) Brady has gray areas that make for difficult choices; and (4) erroneous decisions regarding Brady evidence would result in constitutional violations. 553 F.3d, at 854; App. to Pet. for Cert. 141a, 2005 WL 3541035, 13. *This is insufficient*")(emphasis added).

In this case, the Village's moving papers establish that prior to October 18, 2012, it was never put on any sort of notice that the manner in which it carried out arrests under Penal Law §240.30 violated any citizen's First Amendment rights.  In fact, prior to October 18, 2012, no Court, to the Village's knowledge, ever found an arrest by a Village law enforcement officer under Penal Law §240.30(1)(a) to have illegally infringed upon an arrestee's First Amendment rights.  Accordingly, absent any notice to the Village that the manner in which its employees carried out arrests under Penal Law §240.30(1)(a) interfered with any citizen's protected Constitutional rights, no unlawful "policy" or

"custom," based on its claimed failure to train, can be established. <u>Miller v. County of Nassau</u>, 2013 WL 1172833(E.D.N.Y.)(holding that absent proof of actual or constructive notice of similar constitutional violations, the plaintiff could not show that failure to train amounted to "deliberate indifference").

Even assuming, arguendo, that the Village's lack of training regarding the contours of Penal Law §240.30 could be deemed to satisfy the stringent "deliberate indifference" standard set forth by the Supreme Court in <u>Connick</u> (and it cannot), the plaintiff's failure to train claim against the Village is without merit since the plaintiff plainly cannot show, as required, that the alleged failure to train "actually caused" the alleged unlawful arrest on October 18, 2012. See, <u>De Michele v. City of New York</u>, 2012 WL 4354763(S.D.N.Y.)("City of Canton requires a plaintiff to establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that a specific deficiency in the city's training program is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation").

Here, any claim that the lack of "additional" or "better" training could be deemed to have "actually caused" the actions of Detective D'Agata and Officer Gorr in participating in the subject October 18, 2012 arrest is nonsensical under the unique fact pattern presented in this case. As indicated above, ADA Zangla instructed Detective D'Agata to charge and arrest the plaintiff, and the charge and arrest were clearly approved, by Judge Rourke, from the bench. With these facts in mind, it is hard to see how "additional" or "better" training would have somehow operated to *avoid* the arrest from taking place in the first instance, since it was clearly authorized by those who, at a

minimum, were obviously better trained on the nuances of the law than the officers, and who were the exact individuals that any prudent police officer would rely upon in securing legal advice (i.e. a District Attorney and a Judge). In any event, to the extent that the subject statute had "gray" areas, that "additional" or "better" training would have helped to clarify, the defendant police officers in fact *did* understand, from their own police training, that non-threatening communications could not be prosecuted. Nevertheless, with respect to this alleged "gray" area, the defendant officers reasonably relied on the advice, instructions and actions of ADA Zangla and Judge Rourke that the plaintiff's communications did amount to an actual threat, and reasonably understood, based on this reliance, that the plaintiff's underlying conduct was actionable.

VI.   ALL CLAIMS AGAINST POLICE OFFICER GORR SHOULD BE DISMISSED

As referenced in the defendants' submissions, Officer Gorr's involvement in claim at issue is based simply on the fact that he was asked, by Detective D'Agata, to assist in the subject arrest of the plaintiff as authorized and directed by ADA Zangla, and as further approved by Judge Rourke from the bench. Gorr Affidavit, ¶¶ 10, 11 and 12. Under these circumstances, Officer Gorr may not be found liable merely for agreeing to assist his fellow officer in effectuating the subject arrest, especially where, as here, the arrest was approved and authorized by both an Assistant District Attorney and a Judge, thus providing clear probable cause supporting the legality of the arrest.

When making a probable cause determination, police officers are "entitled to rely on the allegations of fellow police officers." Martinez v. Simonetti, 202 F.3d 625 at 634 (2d Cir. 2000). "Absent significant indications to the contrary, an officer is entitled to rely on his fellow officer's determination that an arrest was lawful." Loria v. Gorman, 306

F.3d 1271, 1288 (2d Cir.2002). "[T]he determination of probable cause does not turn on whether [the fellow agent's] observations were accurate, but on whether [the arresting agent] was reasonable in relying on those observations." Bernard v. United States, 25 F.3d 98 at 103 (2d Cir. 1994).

Here, to the extent that Officer Gorr, prior to the subject arrest, merely agreed to assist Detective D'Agata in effectuating same based on the authorization and approval of the arrest by ADA Zangla and Judge Rourke, Officer Gorr cannot be held liable for the challenged arrest under settled law. Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir.1989)(holding that arresting officer who had made no independent investigation of a witness' claim that she had been robbed nonetheless had probable cause to arrest a suspect where the police had received written instructions from the District Attorney's office to arrest the suspect following an investigation conducted by the DA's office).

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully requested that the defendants, the VILLAGE OF LIBERTY, STEVEN D'AGATA AND MELVIN GORR's motion for summary judgment pursuant to FRCP Rule 56 be granted in its entirety.

Dated: New Windsor, New York
       August 1, 2014

                              Yours, etc.,

                              DRAKE, LOEB, HELLER, KENNEDY,
                              GOGERTY, GABA & RODD, PLLC


                        By: _____
                              ADAM L. RODD (AR-3484)
                              *Attorneys for Defendants,*
                              *VILLAGE OF LIBERTY, STEVEN*
                              *D'AGATA AND MELVIN GORR*
                              555 Hudson Valley Avenue
                              Suite 100
                              New Windsor, New York 12553
                              Tel. No.:  (845) 561-0550