UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WILLIAN BARBOZA,

        Plaintiff,

-vs-                                                13 Civ. 4057 (CS)

VILLAGE OF LIBERTY, DETECTIVE
STEVEN D'AGATA, sued in his individual
capacity, MELVIN GORR sued in his
individual capacity, and ROBERT ZANGLA,
sued in his individual capacity,

        Defendants.
------------------------------------------------------------X

**PLAINTIFF'S RESPONSE TO DEFENDANTS D'AGATA, GORR
AND VILLAGE OF LIBERTY'S RULE 56.1 STATEMENT AND
COUNTERSTATEMENT OF ADDITIONAL MATERIAL FACTS IN
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Rule 56.1, Plaintiff Willian Barboza responds to Defendants D'Agata, Gorr, and Village of Liberty's Rule 56.1 statement as follows:

**GENERAL RESPONSES:**

Plaintiff disputes Defendants' Local Rule 56.1 Statements 22, 23, 25, 26, 30, 35, 37, 39, 49, 50, 51, 64, and 65 to the extent that they include or imply legal arguments, as "legal arguments ... belong in briefs, not Rule 56.1 statements, and so are disregarded in determining whether there are genuine issues of material fact." *Alliance Sec. Prods., Inc. v. Fleming Co.*, 471 F. Supp. 2d 452, 454 (S.D.N.Y. 2007).

**RESPONSES:**

1.    The plaintiff, Willian Barboza (hereinafter "plaintiff") is presently 23 years of age, and resides in the State of Connecticut. Exhibit "F" at p. 5, lines 11 to 15.

RESPONSE: **Undisputed**.

1

2. On May 5, 2012 the plaintiff was issued a speeding ticket, by a New York State Trooper, while traveling on State Route 17, in the Town of Liberty. Exhibit "I;" Exhibit "F" at pp. 24 to 25, lines 22 to 24 and lines 1 to 2 respectively.

RESPONSE: **Undisputed, except that, as indicated in Defendants' Exhibit I and ¶ 3 below, the date was May 4, 2012.**

3. On the May 4, 2012 date, the plaintiff was charged with violating Vehicle and Traffic Law 1180(d) for traveling at 82 mph in a 65 mph zone. Exhibit "I;" Exhibit "F" at p. 31, lines 10 to 19.

RESPONSE: **Undisputed**.

4. The plaintiff testified that he believes that it is acceptable to drive over the speed limit, depending on the circumstances. Exhibit "F" at p. 30, lines 13 to 16.

RESPONSE: **Undisputed**.

5. On June 3, 2012, the plaintiff pled guilty to speeding as charged. Exhibit "I;" Exhibit "F" at p. 33, lines 6 to 10.

RESPONSE: **Undisputed**.

6. The plaintiff mailed in his signed guilty plea to the Town of Liberty Justice Court on June 3, 2012. Exhibit "F" at pp. 33 to 34, lines 22 to 24 and lines 1 to 7, respectively.

RESPONSE: **Undisputed**.

7. At some point on or after July 23, 2012, the plaintiff received a form from the Town of Liberty Justice Court indicating that the plaintiff's guilty plea had been accepted, with instructions for the payment of the assessed fine and surcharge. Exhibit "J;" Exhibit "F," at pp. 34 to 35, lines 16 to 24 and lines 1 to 6.

RESPONSE: **Undisputed**.

8. On the form sent to the plaintiff by the Town of Liberty Justice Court, the plaintiff provided his credit card information for the payment of the fine and surcharge, and also wrote "FUCK YOUR SHITTY TOWN BITCHES." Exhibit "J;" Exhibit "F" at p. 39, lines 14 to 19.

RESPONSE: **Undisputed**.

9. The plaintiff mailed in the form, containing his handwriting which stated "FUCK YOUR SHITTY TOWN BITCHES," to the Town of Liberty Justice Court. Exhibit "F" at p. 39, lines 20 to 23.

RESPONSE: **Undisputed**.

10. Prior to mailing the form, which contained the plaintiff's handwriting which stated "FUCK YOUR SHITTY TOWN BITCHES," the plaintiff never spoke to anyone from the Town of Liberty Justice Court. Exhibit "F" at pp. 36-37, lines 9 to 24 and lines 1 to 2, respectively.

RESPONSE: **Undisputed**.

11. The plaintiff mailed the form, containing his handwriting "FUCK YOUR SHITTY TOWN BITCHES," to the Town of Liberty Justice Court on August 17, 2012. Exhibit "F" at p. 44, lines 8 to 19.

RESPONSE: **Undisputed**.

12. The form containing the plaintiff's handwriting, which stated "FUCK YOUR SHITTY TOWN BITCHES," contains a date stamp indicating that the form was received at the Town of Liberty Justice Court on August 20, 2011. Exhibit "J".

RESPONSE: **Undisputed, except that, as indicated in Defendants' Exhibit J, the year was 2012.**

13. As of August of 2012, all of the clerks who worked at the Town of Liberty Justice Court were female. D'Agata Affidavit, ¶ 10; Exhibit "H" at pp. 15 to 16, lines 15 to 25 and lines 2 through 15.

RESPONSE: **Undisputed**.

14. Brian Rourke (hereinafter "Judge Rourke") is employed as a Town Judge for the Town of Liberty. Exhibit H at p. 4, lines 18 to 20.

RESPONSE: **Undisputed**.

15. In addition to being a Town Judge, Judge Rourke is also a practicing attorney. Exhibit "H," at p. 4, lines 18-23.

RESPONSE: **Undisputed**.

16. Judge Rourke graduated from the Pace University Law School in 1998. Exhibit "H," at p. 10, lines 6 to 9.

RESPONSE: **Undisputed**.

17. Judge Rourke served as an Acting Judge for the Village of Liberty Justice Court from 2001 to 2003, and then served as a Town Judge for the Town of Liberty Justice Court from 2003 until the present date. Exhibit "H" at p. 7, lines 12 to 17.

RESPONSE: **Undisputed**.

18. Judge Rourke first learned of the form sent in by the plaintiff, containing plaintiff's the handwriting stating "FUCK YOUR SHITTY TOWN BITCHES," when one of the female Court Clerks brought this form to his attention. Exhibit "H" at p. 25, lines 4 through 22.

RESPONSE: **Undisputed**.

19. Judge Rourke indicated that at or about the time that one of his female Court Clerks brought the form, with the plaintiff's handwriting, to his attention, he himself reviewed the form and was shocked by its contents. Exhibit "H," at p. 27, lines 17 to 25.

RESPONSE: **Undisputed that Justice Rourke so testified at his deposition**.

20. Judge Rourke indicated that his Court Clerks expressed to him that they were upset and alarmed by the form containing the plaintiff's handwriting, and indicated that they were quite alarmed

4

that someone would send in such a form unprovoked, and for no reason. Exhibit "H," at p. 30, lines 11 to 23.

RESPONSE: **Undisputed that Justice Rourke so testified at his deposition.**

21. Judge Rourke indicated that his entire Court Staff relayed to him that they were upset by the subject form containing the plaintiff's handwriting. Exhibit "H" at p. 30 to 31, lines 24 to 25 and lines 2 to 4.

RESPONSE: **Undisputed that Justice Rourke so testified at his deposition.**

22. Judge Rourke indicated that upon reviewing the form containing the plaintiff's handwriting, he felt that the language written by the plaintiff was threatening, and that the content of the plaintiff's writing raised the concern that the plaintiff was a threat to the Court Clerks and others. Exhibit "H" at p. 32, lines 3 to 15.

RESPONSE: **Undisputed that Justice Rourke so testified at his deposition, but disputed insofar as that testimony incorporates or implies legal conclusions or implies that Justice Rourke reasonably believed that the language that Plaintiff had written was threatening and that it raised the concern that Plaintiff was a threat to the Court clerks and others.**

23. Judge Rourke testified that because he felt the plaintiff's language on the form to be threatening, he referred the matter to the Sullivan Country District Attorney's Office for an evaluation as to whether the plaintiff's conduct constituted a crime. Exhibit "H" at p. 32, lines 3 to 15.

RESPONSE: **Undisputed that Justice Rourke so testified at his deposition, but disputed that Justice Rourke reasonably believed that the language that plaintiff had written was threatening and that it raised the concern that plaintiff was a threat to the Court clerks and others. Further disputed that Justice Rourke had a legitimate belief that plaintiff had violated any laws.** *See* **Plaintiff's Response to ¶ 22,** *supra.*

5

24. Judge Rourke indicated that it was the plaintiff's handwritten comment of "FUCK YOUR SHITTY TOWN BITCHES" that caused him to refer the plaintiff's letter to the Sullivan County District Attorney's Office – not the plaintiff's act of crossing out the word "Lliberty," and substituting in its place the word "Tyranny," on the top of form. Exhibit "H" at p. 33 to 34, lines 24 to 25 and lines 2 through 12.

RESPONSE: **Undisputed that Justice Rourke so testified at his deposition.**

25. Judge Rourke indicated that he felt that the plaintiff's unprovoked mailing of the form containing the language "FUCK YOUR SHITTY TOWN BITCHES" was threatening in nature, and he did not consider this writing to be protected by the First Amendment. Exhibit "H" at p. 33 to 34, lines 15 to 25 and lines 2 through 18.

RESPONSE: **Undisputed that Justice Rourke so testified at his deposition, but disputed that Justice Rourke reasonably believed that the language that plaintiff had written was threatening and that it raised the concern that plaintiff was a threat to the Court clerks and others. Further disputed that Justice Rourke had a legitimate belief that plaintiff had violated any laws.** *See* **Plaintiff's Response to ¶ 22,** *supra***.**

26. After Judge Rourke reviewed the plaintiff's handwritten form, and found same to be threatening in nature, he brought the subject form to the attention of Robert Zangla, an Assistant District Attorney who is employed by the Sullivan County District Attorney's Office. Exhibit "H" at page 37, lines 20 to 23.

RESPONSE: **Undisputed, but disputed that Justice Rourke reasonably believed that the language that plaintiff had written was threatening and that it raised the concern that plaintiff was a threat to the Court clerks and others. Further diputed that Justice Rourke had a legitimate belief that plaintiff had violated any laws.** *See* **Plaintiff's Response to ¶ 22,** *supra***.**

6

27. Robert Zangla graduated from the Albany Law School in 1997, and was admitted to the New York State Bar in 1998. Exhibit "G" at p. 6, lines 2 through 10.

RESPONSE: **Undisputed**.

28. Mr. Zangla is an Assistant District Attorney with the Sullivan County District Attorney's Office, and as of calendar year 2013, he had been employed as an Assistant District Attorney for the Sullivan County District Attorney's Office for 14 years. Exhibit "G" at p. 5, lines 17 to 19.

RESPONSE: **Undisputed**.

29. After a court session of the Town of Liberty Justice Court, Judge Rourke provided ADA Zangla with the document containing the plaintiff's handwritten comments, and asked ADA Zangla if the subject document fit the statute prohibiting disorderly conduct. Exhibit "G" at p. 15, line 2 to p. 16, line 2.

RESPONSE: **Undisputed**.

30. Judge Rourke, in his initial communications with ADA Zangla, advised ADA Zangla that he thought the plaintiff's conduct fit into a prohibition provided by the Penal Law. Exhibit "H" at p. 63, lines 13 to 20.

RESPONSE: **Disputed. In the conversation between Justice Rourke and Zangla, Justice Rourke "wondered" if plaintiff's speech "fit the statute for disorderly conduct." (Zangla Dep. at 15:13-16:20; *see also* Rourke Dep. at 37:20-38:25.) The record does not support the assertion that Justice Rourke "advised ADA Zangla that he thought the plaintiff's conduct fit into a prohibition provided by the Penal Law." Moreover, disputed that Justice Rourke would have reasonably believed that plaintiff had violated any laws. *See* Plaintiff's Response to ¶ 22, *supra*.**

31. In response to Judge Rourke's request, ADA Zangla advised Judge Rourke that he would review the document containing the plaintiff's handwriting, as well as the statute. Exhibit "G" at p. 16, lines 5 to 8.

RESPONSE: **Undisputed**.

32. Upon receiving the document containing the plaintiff's handwriting from Judge Rourke, ADA Zangla took the subject document and showed it to another ADA in his office – Meagan Galligan, Esq. - to see what she thought of the subject document. Exhibit "G" at p. 17 to 18, lines 20 to 25 and line 2; p. 19, lines 11 to 25.

RESPONSE: **Undisputed**.

33. A short period of time after ADA Zangla left the document containing the plaintiff's handwriting with ADA Galligan, ADA Zangla returned to Ms. Galligan's office and saw the words "Ag Harassment" written on the document. Upon seeing this, ADA Zangla advised ADA Galligan that Aggravated Harassment was the charge that he "had come up with also, if there would be a charge." Exhibit "G" at p. 20, lines 9 to 25.

RESPONSE: **Undisputed**.

34. ADA Zangla indicated that the writing containing the words aggravated harassment, that was written on the document containing the plaintiff's handwriting, was that of the Sullivan County District Attorney himself, James Farrell, Esq. Exhibit "G" at p. 21, lines 2 through 6.

RESPONSE: **Undisputed that Zangla so testified in his deposition.**

35. ADA Zangla indicated that he was familiar with the Aggravated Harassment statute to some extent, and that when he reviewed the statutes, he himself had drawn the conclusion that the plaintiff's conduct did violate the Aggravated Harassment statute. Exhibit "G" at p. 21, lines 15 to 25 and p. 22, lines 2 to 4.

RESPONSE: **Undisputed that Zangla so testified in his deposition, but disputed that Zangla was sufficiently familiar with the aggravated harassment statute, or that he reasonably believed that plaintiff had violated the statute. Zangla was aware that plaintiff had written his comment on the payment form from afar and nothing about plaintiff's comment suggested that he had violated any law. (Exhibit J to Village motion). In particular, Zangla did not review the case law on aggravated harassment. (Zangla Dep. at 63:10-16).**

36. Prior to the subject prosecution of the plaintiff under the Aggravated Harassment statute, ADA Zangla indicated that he prosecuted other individuals under that particular statute numerous times. Exhibit "G" at p. 61, lines 3 through 7.

RESPONSE: **Undisputed that Zangla so testified at his deposition.**

37. ADA Zangla opined that the plaintiff's handwritten comments violated the Aggravated Harassment statute, and fit the statute perfectly. Exhibit "G" at p. 58, line 19 to p. 59, line 6.

RESPONSE: **Undisputed that Zangla so opined at his deposition, but disputed that Zangla had a legitimate justification for that conclusion. In particular, Zangla did not review the case law on aggravated harassment. (Zangla Dep. at 63:10-16);** *see also* **Plaintiff's Response to ¶ 35.**

38. The Sullivan County District Attorney, James Farrell, Esq., advised ADA Zangla to file a charge of Aggravated Harassment against the plaintiff at some point prior to the October 18, 2012 date. Exhibit "G" at p. 62, lines 15 to 19.

RESPONSE: **Undisputed.**

39. Sullivan County District Attorney James Farrell, Esq. advised ADA Zangla that the plaintiff's comments fit the statute prohibiting Aggravated Harassment, and ADA Zangla agreed. Exhibit "G" at p. 24, lines 5 to 17.

9

RESPONSE: **Undisputed, except disputed to the extent the statement implies that anyone in the District Attorney's office reasonably believed that plaintiff's comments fit the statute prohibiting Aggravated Harassment. Further disputed that anyone in that office had a legitimate belief that plaintiff had violated any laws.** *See* **Plaintiff's Response to ¶ 22,** *supra***.**

40. On September 26, 2012, Judge Rourke wrote to the plaintiff to advise that the plainitff's payment by mail of the fine and surcharge "will not be accepted," and ordered the plaintiff to personally appear back in court on October 18, 2012, with the admonition that the plaintiff's "Failure to appear may result in a warrant for your Arrest." Exhibit "K"; Exhibit "H" at p. 40, line 6, to p. 41, line 2.

RESPONSE: **Undisputed.**

41. Prior to the October 18, 2012 date, during a conversation with Judge Rourke, ADA Zangla advised Judge Rourke that when the plaintiff returned to Court he would be arrested. Exhibit "G" at p. 28, line 23 to p. 30, line 14.

RESPONSE: **Undisputed.**

42. Judge Rourke testified that he understood that when the plaintiff returned on October 18, 2012, that he would be charged with Aggravated Harassment at that time. Exhibit "H" at p. 54, line 24 to p. 55, line 6.

RESPONSE: **Undisputed that Justice Rourke so testified at his deposition.**

43. Prior to taking the bench on the October 18, 2012 date, Judge Rourke understood, based upon discussions between ADA Zangla and the Court Clerks at the Town of Liberty Justice Court, that the plaintiff was going to be arrested on that date. Exhibit "H" at p. 60, lines 13 to 23.

RESPONSE: **Undisputed.**

44. Judge Rourke testified that the decision to arrest the plaintiff was made by the Sullivan County District Attorney's Office. Exhibit "H" at p. 59, lines 21 to 23.

RESPONSE: **Undisputed that Justice Rourke so testified at his deposition. Plaintiff adds that based on ADA Zangla's direction, D'Agata also made the decision to arrest plaintiff. (D'Agata Dep. at 34:24-35:8).**

45. The Village of Liberty Police Department provides police security services at the Town of Liberty Justice Court. D'Agata Affidavit, ¶ 7; Gorr Affidavit, ¶ 7; Kinne Affidavit, ¶ 9.

RESPONSE: **Undisputed**.

46. Detective D'Agata was scheduled to provide police security services at the Town of Liberty Justice Court on the October 18, 2012 date. D'Agata Affidavit, ¶ 8.

RESPONSE: **Undisputed**.

47. Prior to the call of the calendar on the October 18, 2012 date, ADA Zangla approached Detective D'Agata and asked Detective D'Agata to draft an Information charging the plaintiff with Aggravated Harassment in the Second Degree as provided for in Penal Law §240.30(1)(a). D'Agata Affidavit ¶ 10. Exhibit "G" at p. 37, line 4 to p. 38, line 23; Exhibit "D", ¶ 23.

RESPONSE: **Undisputed, except to clarify that ADA Zangla did not merely "ask" D'Agata to file the charge but directed him to draft the accusatory instrument and arrest plaintiff. *See* D'Agata Dep. at 13:12-16; 14:25-15:6 (testifying that as Zangla "told [D'Agata] to do it," D'Agata deemed it a directive); Gorr Dep. at 10:11-17 (D'Agata told Melvin Gorr that Zangla "told him to arrest Mr. Barboza on aggravated harassment"); D'Agata Aff. ¶ 11 ("ADA Zangla further advised me that at the time of the calendar call, the plaintiff would be charged with violating this provision of the Penal Law, and that I was to then arrest the plaintiff after he was so charged"); *id.* at ¶ 13 ("Pursuant to the instructions of ADA Zangla, I drafted an Information charging the plaintiff with Aggravated Harassment in the Second Degree"); *see also* Zangla Dep. at 39:5-14 (testifying that D'Agata was drafting the accusatory instrument "at my direction"); *Id.* at 65:3-6 (testifying**

that "[D'Agata] filed [the accusatory instrument] because I asked him to"); *Id.* at 65:11-20 (testifying that request to file an accusatory instrument "go hand in hand" with request to arrest).

48. At the time that ADA Zangla asked Detective D'Agata to draft an Information charging the plaintiff with Aggravated Harassment in the Second Degree, ADA Zangla showed Detective D'Agata a copy of the plaintiff's handwritten comments mailed to the Justice Court. D'Agata Affidavit, ¶ 10.

RESPONSE: **Undisputed, except to clarify that Zangla did not merely "ask" D'Agata to file the charge but directed him to draft the accusatory instrument and arrest plaintiff.** *See* **Plaintiff's Response to ¶ 47,** *supra***.**

49. ADA Zangla advised Detective D'Agata that the plaintiff's handwritten comments amounted to a threat to the safety of the female Court Clerks at the Town of Liberty Justice Court. D'Agata Affidavit; ¶ 10.

RESPONSE: **Disputed. While it is undisputed that ADA Zangla advised Detective D'Agata that the female Court Clerks at the Town of Liberty Justice Court "felt threatened, ... worried for their safety, ... and felt threatened and alarmed by" plaintiff's letter, he did not advise Detective D'Agata of any reason that the plaintiff's handwritten comments would amount to a threat to the safety of the female Court Clerks at the Town of Liberty Justice Court. (D'Agata Dep. at 12:12-13:3, 16:3-18; 23:8-10). Plaintiff further disputes that Zangla had a legitimate justification for concluding that plaintiff's handwritten comments amounted to a threat to the safety of the female Court Clerks at the Town of Liberty Justice Court.**

50. ADA Zangla advised Detective D'Agata that the female Court Clerks felt alarmed, worried for their safety, and threatened by the plaintiff's correspondence. D'Agata Affidavit, ¶ 10.

RESPONSE:  **Undisputed, except disputed to the extent that Zangla had a legitimate justification for advising Detective D'Agata that the female court clerks felt alarmed, worried or their safety, and threatened by the plaintiff's correspondence.**

51. At the time that ADA Zangla asked Detective D'Agata to draft Information charging the plaintiff with Aggravated Harassment in the Second Degree, ADA Zangla believed that there was probable cause to charge the plaintiff with that section of the Penal Law. Exhibit "G" at p. 72, lines 15 to 21.

RESPONSE: **Disputed that Zangla had a legitimate justification for concluding that plaintiff had violated the aggravated harassment law.** *See* **Plaintiff's Response to ¶ 49,** *supra.*

52. In addition to asking Detective D'Agata to file the charge against the plaintiff of Aggravated Harassment in the Second Degree, ADA Zangla also advised Detective D'Agata to attach a copy of the plaintiff's handwritten comments to the Information. Exhibit "G" at p. 38, line 24 to p. 39, line 4.

RESPONSE: **Undisputed.**

53. In addition to instructing Detective D'Agata to draft an Information charging the plaintiff with Aggravated Harassment in the Second Degree, ADA Zangla instructed Detective D'Agata to arrest the plaintiff once he was charged. D'Agata Affidavit, ¶ 11; Exhibit "D", ¶ 23.

RESPONSE: **Undisputed that ADA Zangla instructed Detective D'Agata to arrest the plaintiff, but disputed that Zangla specifically directed D'Agata to do so once he was charged. (D'Agata at 42:25-43:5). The decision to arrest plaintiff was made before an accusatory instrument was drawn up.** *Id.*

54. Detective D'Agata asked Officer Gorr to assist in the arrest that ADA Zangla had instructed him to effectuate. D'Agata Affidavit; ¶ 14.

13

RESPONSE: **Undisputed.**

55. After Detective D'Agata drafted an Information charging the plaintiff with Aggravated Harassment in the Second Degree, Detective D'Agata provided ADA Zangla with a copy of the Information prior to the plaintiff's case being call on the calendar. D'Agata Affidavit, ¶ 15. Exhibit "G" at p. 41, lines 9 through 12.

RESPONSE: **Undisputed.**

56. ADA Zangla reviewed and approved the Information drafted by Detective D'Agata. D'Agata Affidavit, ¶ 15.

RESPONSE: **Undisputed.**

57. At the time that Mr. Barboza's case was called on October 18, 2012, ADA Zangla handed to Judge Rourke the Information charging the plaintiff with Aggravated Harassment in the Second Degree. D'Agata Affidavit, ¶ 16.

RESPONSE: **Undisputed.**

58. At the time that Judge Rourke called the plaintiff's case on October 18, 2012, Judge Rourke reprimanded the plaintiff about the handwritten comments he sent into the Town of Liberty Justice Court. D'Agata Affidavit, ¶ 17; Exhibit "D;" ¶ 17.

RESPONSE: **Undisputed.**

59. At the time that the plaintiff's case was called by Judge Rourke on the October 18, 2012 date, Judge Rourke read at the Information, which charged the plaintiff with Aggravated Harassment in the Second Degree. D'Agata Affidavit, ¶ 16.

RESPONSE: **Disputed. Justice Rourke did not "read" the information. Rather, he "may have scanned" it when plaintiff's case was called, and he was not looking for any deficiencies in the document. (Rourke Dep. at 74:18-25).**

60. Judge Rourke, upon looking at the subject Information, did not find anything improper or inappropriate, with respect to the Information. Exhibit "H" at p. 75, lines 2 through 8.

RESPONSE: **Undisputed that Justice Rourke so testified at his deposition, except to clarify that, at most, Justice Rourke "may have scanned" the Information when plaintiff's case was called, and he was not looking for any deficiencies in the document. (Rourke Dep. at 74:18-25).**

61. After reprimanding the plaintiff about his comments from the bench, and reading the Information charging the plaintiff with Aggravated Harassment in the Second Degree, Judge Rourke personally served the Information on the plaintiff from the bench. D'Agata Affidavit, ¶ 17; Exhibit "H" at p. 55, lines 19 to 25.

RESPONSE: **Undisputed that after reprimanding the plaintiff about his comments from the bench, Justice Rourke gave Plaintiff the accusatory instrument. However, plaintiff clarifies that the decision to arrest him was made before Justice Rourke got on the bench (Rourke Dep. at 60:13-23), and Justice Rourke merely handed Plaintiff the accusatory instrument "at the request of law enforcement personnel."** *Id.* **at 61:12-17. Disputed that Justice Rourke "read" the Information.** *See,* **Plaintiff's Response to ¶ 59.**

62. After Judge Rourke handed the plaintiff the Information charging him with Aggravated Harassment in the Second Degree, Judge Rourke informed the plaintiff he would be arrested. D'Agata Affidavit; ¶17.

RESPONSE: **Undisputed, except to clarify that the decision to arrest plaintiff was made before Justice Rourke got on the bench. (Rourke Dep. at 60:13-23).**

63. After the Judge Rourke advised the plaintiff that he would be arrested, Detective D'Agata and Officer Gorr handcuffed the plaintiff, and escorted the plaintiff to the Village of Liberty Police

60. Judge Rourke, upon looking at the subject Information, did not find anything improper or inappropriate, with respect to the Information. Exhibit "H" at p. 75, lines 2 through 8.

RESPONSE: **Undisputed that Justice Rourke so testified at his deposition, except to clarify that, at most, Justice Rourke "may have scanned" the Information when plaintiff's case was called, and he was not looking for any deficiencies in the document. (Rourke Dep. at 74:18-25).**

61. After reprimanding the plaintiff about his comments from the bench, and reading the Information charging the plaintiff with Aggravated Harassment in the Second Degree, Judge Rourke personally served the Information on the plaintiff from the bench. D'Agata Affidavit, ¶ 17; Exhibit "H" at p. 55, lines 19 to 25.

RESPONSE: **Undisputed that after reprimanding the plaintiff about his comments from the bench, Justice Rourke gave Plaintiff the accusatory instrument. However, plaintiff clarifies that the decision to arrest him was made before Justice Rourke got on the bench (Rourke Dep. at 60:13-23), and Justice Rourke merely handed Plaintiff the accusatory instrument "at the request of law enforcement personnel."** *Id.* **at 61:12-17. Disputed that Justice Rourke "read" the Information.** *See,* **Plaintiff's Response to ¶ 59.**

62. After Judge Rourke handed the plaintiff the Information charging him with Aggravated Harassment in the Second Degree, Judge Rourke informed the plaintiff he would be arrested. D'Agata Affidavit; ¶17.

RESPONSE: **Undisputed, except to clarify that the decision to arrest plaintiff was made before Justice Rourke got on the bench. (Rourke Dep. at 60:13-23).**

63. After the Judge Rourke advised the plaintiff that he would be arrested, Detective D'Agata and Officer Gorr handcuffed the plaintiff, and escorted the plaintiff to the Village of Liberty Police

Department (which as located in the building adjacent to the Town of Liberty Justice Court) for processing. D'Agata Affidavit, ¶ 17; Gorr Affidavit, ¶ 12.

RESPONSE: **Undisputed, except to clarify that at the police station, Gorr took the handcuffed plaintiff to the processing room, where he handcuffed plaintiff to a bench, processed the arrest, took plaintiff's mug shot and fingerprinted him. (D'Agata Dep. at 47:14-48:24; Gorr Dep. at 18:21-19:15; Plaintiff Decl. ¶ 13; Plaintiff Dep. at 59:13-60:24). From the time of his arrest until Gorr turned him over to the Sullivan County Jail, plaintiff was handcuffed and not free to leave police custody. (Gorr Dep. at 28:9-29:3).**

64. Prior to October 18, 2012, the Village of Liberty Police Department did not receive any complaints, from any source, that arrests made pursuant to Penal Law §240.30 were violative of the First Amendment rights of any citizen. Kinne Affidavit, ¶¶ 7 and 8; D'Agata Affidavit ¶ 6; Gorr Affidavit, ¶ 6.

RESPONSE: **Undisputed that the Village of Liberty Police Department did not receive any complaints regarding arrests made by its officers under Penal Law § 240.30, but disputed insofar as the statement incorporates or implies legal conclusions or implies that the Village was not on notice of its officers' unconstitutional arrests for protected expression. As set forth in plaintiff's affirmative Rule 56.1 Statement, the Village was on constructive notice that the arrests violated of the First Amendment rights of citizens and were deliberately indifferent to a pattern of Village police officers arresting individuals for constitutionally protected expression.**

65. Prior to October 18, 2012, the Village of Liberty Police Department was not notified, by any source, that any court had adjudicated or found that any arrests made by personnel on the part of the Village of Liberty Police Department violated any citizens First Amendment rights. Gorr Affidavit, ¶ 6; D'Agata Affidavit, ¶ 6; Kinne Affidavit, ¶¶ 7 and 8.

16

RESPONSE: **Undisputed, except disputed insofar as the statement incorporates or implies legal conclusions or implies that the Village was not on notice of its officers' unconstitutional arrests for protected expression.** *See* **Plaintiff's Response to ¶ 64.**

66. On November 26, 2012 the plaintiff wrote to the Chief Clerk of the Sullivan County Court and accused ADA Zangla of "being a vexatious moron." Exhibit "M."

RESPONSE: **Undisputed, but plaintiff notes this allegation has no bearing on this case.**

67. On November 28, 2012 the plaintiff wrote to ADA Zangla and wrote that "I hope this letter finds you in terminally ill health, stuck in a loveless marriage and full of self loathing every time you catch a glimpse of yourself in the mirror." Exhibit "N."

RESPONSE: **Undisputed, but plaintiff notes this allegation has no bearing on this case.**

68. On November 28, 2012 the plaintiff wrote to ADA Zangla and accused him of acting "like a butt hurt little bitch." Exhibit "N."

RESPONSE: **Undisputed, but plaintiff notes this allegation has no bearing on this case.**

69. On December 24, 2012 the plaintiff wrote to Mayor Winters of the Village of Liberty and wrote that the Sullivan County District Attorney's Office "really is a clown college masquerading as the People's prosecutors with Jimmy Farrell being head Bozo." Exhibit "O."

RESPONSE: **Undisputed, but plaintiff notes this allegation has no bearing on this case.**

70. The plaintiff moved to have the charge of Penal Law §240.30(1)(a) dismissed against him on the basis that the statute was unconstitutional as applied. Exhibit "P."

RESPONSE: **Undisputed**.

71. The Sullivan County District Attorney's Office opposed the dismissal of the charge brought against the plaintiff under Penal Law §240.30(1)(a). Exhibit "Q."

RESPONSE: **Undisputed**.

72. Judge Kalter of the Town of Fallsburg Justice Court, in his Decision dated March 22, 2012 found that although the plaintiff's conduct "might seem to fall within the four corners" of Penal Law §240.30(1)(a), the speech he was charged with was protected. Exhibit "R."

RESPONSE: **Undisputed**.

### PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS

Plaintiff offers as counter-statement of material facts the undisputed facts contained in Plaintiff's Rule 56.1 Statement, dated September 19, 2014, paragraphs 1 to 19 and paragraphs 30 to 99.

Dated: September 19, 2014

Respectfully submitted,

STEPHEN BERGSTEIN

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
Tel: (845) 469-1277
Fax: (845) 469-5904

*Of counsel:*

MARIKO HIROSE
JORDAN WELLS
COREY STOUGHTON
CHRISTOPHER DUNN

NEW YORK CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300
Fax: (212) 607-3318
*Counsel for Plaintiff*

18