UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
WILLIAN BARBOZA,

              Plaintiff,

-vs-                                                    13 Civ. 4057 (CS)

VILLAGE OF LIBERTY, DETECTIVE
STEVEN D'AGATA, sued in his individual
capacity, MELVIN GORR sued in his
individual capacity, and ROBERT ZANGLA,
sued in his individual capacity,

              Defendants.
------------------------------------------------------------X

## PLAINTIFF'S RESPONSE TO DEFENDANT ZANGLA'S LOCAL RULE 56.1 STATEMENT AND COUNTERSTATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION TO ZANGLA'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, Plaintiff Willian Barboza responds to Defendant Robert Zangla's Rule 56.1 statement as follows:

**GENERAL OBJECTIONS:**

Plaintiff disputes Defendant Zangla's Local Rule 56.1 Statements 2, 3, 14, 15, 16, 18, 19, 20, 23, and 27, to the extent that they include or imply legal arguments. "Legal arguments ... belong in briefs, not Rule 56.1 statements, and so are disregarded in determining whether there are genuine issues of material fact." *Alliance Sec. Prods., Inc. v. Fleming Co.*, 471 F. Supp. 2d 452, 454 (S.D.N.Y. 2007).

**RESPONSES:**

1.    At all times relevant to the action Defendant Zangla was an Assistant District Attorney in the Sullivan County District Attorney's Office. (See, Zangla Deposition, November 18, 2013 (hereinafter "Deposition") Page 4, Lines 16 – 18.)

1

RESPONSE: **Undisputed.**

2. While the Second Amended Complaint states Defendant Zangla is being sued in his individual capacity, all of the allegations in the Second Amended Complaint relate solely to Defendant Zangla's actions as an Assistant District Attorney.

RESPONSE: **Undisputed, except to the extent that the statement implies an improper legal conclusion that all the actions of Zangla comprised prosecutorial functions.**

3. None of the allegations in the Second Amended Complaint relate to Defendant Zangla's conduct as a private individual.

RESPONSE: **Undisputed, except to the extent that the statement implies an improper legal conclusion.**

4. At the time relevant to the action Defendant Zangla had been an Assistant District Attorney for fourteen years. (Deposition, Page 5, Lines 17 – 19)

RESPONSE: **Undisputed.**

5. Defendant Zangla's duty as an Assistant District Attorney was the prosecution of cases, appearing in Justice Court and County Court, responding to discovery demands and other motions and the like. (Deposition, Page 6, Lines 20 – 25)

RESPONSE: **Undisputed.**

6. At the time relevant to the action Defendant Zangla was assigned to the Town of Liberty, Town of Forestburgh and Town of Highland. (Deposition, Page 7, Lines 7 - 12)

RESPONSE: **Undisputed.**

7. Defendant Zangla reported directly to District Attorney Farrell. (Deposition, Page 9, Lines 5 - 10)

RESPONSE: **Undisputed.**

8. Defendant Zangla sometimes makes the decision to file charges and sometimes discussed that issue with District Attorney Farrell. (Deposition, Page 9, Lines 8 – 235)

RESPONSE: **Undisputed**.

9. Defendant Zangla sometimes had a role in drafting Accusatory Instruments. (Deposition, Page 10, Lines 13 – 19)

RESPONSE: **Undisputed, but clarify that Zangla also stated that he generally does not have a role in drafting Accusatory Instruments. (Zangla Dep. at 10:13-19 [Exhibit A to Affidavit of Samuel S. Yasgur]).**

10. Defendant Zangla first saw the document, which is the subject of this action, when it was handed to Defendant Zangla by Judge Brian Rourke at the end of a Court session. Judge Rourke wondered if the writing on the document fit a Disorderly Conduct charge. (Deposition, Page 15; Page 16, Lines 2 - 8)

RESPONSE: **Undisputed**.

11. Defendant Zangla took the document (Exhibit "A") back to the office and showed it to Assistant District Attorney Meagan Galligan. (Deposition, Page 17, Lines 22 – 25; Page 18, Line 2)

RESPONSE: **Undisputed**.

12. When Defendant Zangla next saw the document (Exhibit "A") in Assistant District Attorney Galligan's office it had writing on it, "ag harassment". (Deposition, Page 20, Lines 11 – 25)

RESPONSE: **Undisputed**.

13. Defendant Zangla recognized the writing as District Attorney Farrell's and commented to Assistant District Attorney Galligan that Aggravated Harassment was also the

charge Defendant Zangla had determined. (Deposition, Page 20, Lines 11 – 25; Page 21, Lines 2 – 6)

RESPONSE:  **Undisputed.**

14. Defendant Zangla came to that conclusion from a review of the statutes. Defendant Zangla did not review anything else. (Deposition, Page 21, Lines 23 – 25; Page 22, Lines 2 – 11)

RESPONSE:  **Undisputed, except to clarify that Defendant Zangla's review of the statutes was limited to the text of the statutes itself and not the case law on aggravated harassment. (Zangla Dep. at 63:10-16.) Plaintiff further disputes the statement to the extent it implies an improper legal conclusion that Zangla had a legitimate justification for that conclusion.**

15. Defendant Zangla believed the statement written by Mr. Barboza fit the Aggravated Harassment statute perfectly. (Deposition, Page 56, Lines 19 – 25; Page 57, Lines 2 – 6; Page 72, Lines 15 - 21)

RESPONSE:  **Undisputed, except to the extent that the statement implies an improper legal conclusion that Zangla had a legitimate justification for that conclusion. *See* Plaintiff's Response to ¶ 14, *supra*.**

16. Defendant Zangla discussed the matter with District Attorney Farrell who concurred that the words written by Mr. Barboza fit the charge of Aggravated Harassment. (Deposition, Page 24, Lines 5 – 17)

RESPONSE:  **Undisputed, except to the extent that the statement implies an improper legal conclusion that there was a legitimate justification for District Attorney Farrell's concurrence. *See* Plaintiff's Response to ¶ 14, *supra*.**

4

17.    Mr. Farrell and Defendant Zangla also discussed the fact that there might be a First Amendment defense to the charge. However, District Attorney Farrell told Defendant Zangla to file the charge. (Deposition, Page 24, Lines 22 – 25; Page 25, Lines 2 – 22; Page 60, Lines 12 – 25; Page 61, Line 2; Page 62, Lines 15 – 25; Page 63, Line 2)

RESPONSE: **Undisputed.**

18.    The "victim" of the crime would have been the clerk or clerks who opened and read the document. However, Defendant Zangla does not know who opened the document. (Deposition, Page 26, Lines 2 – 19)

RESPONSE: **Undisputed, except to the extent that it implies an improper legal conclusion that a person who opened and read the document in question would be a victim of any crime.**

19.    Defendant Zangla did not speak with the clerk or clerks about the document. Defendant Zangla did not investigate. (Deposition, Page 53, Lines 16 – 25; Page 54, Line 2 – 9)

RESPONSE: **Undisputed, except to the extent the statement implies an improper legal conclusion that Defendant Zangla did not engage in investigatory conduct that falls outside of absolute immunity.**

20.    In the Second Amended Complaint Plaintiff concedes that Defendant Zangla "… did not conduct a factual investigation, or conduct an independent interview of the individuals in the clerk's office who received the payment form". (Second Amended Complaint, Page 5, Paragraph "22")

RESPONSE: **Undisputed, except to the extent the statement implies an improper legal conclusion that Defendant Zangla did not engage in investigatory conduct that falls outside of absolute immunity.**

21. The Court, by letter dated September 26, 2012 advised Mr. Barboza that his payment by mail would not be accepted and that he was required to appear in Court on the underlying speeding charge. (Deposition, Page 31, Lines 11 – 25 and Page 32, Lines 2 – 15)

RESPONSE: **Undisputed.**

22. Defendant Zangla determined that if Mr. Barboza returned to Court he was going to file the charge which he had discussed with District Attorney Farrell. (Deposition, Page 33, Lines 9 – 10)

RESPONSE: **Undisputed.**

23. Once Defendant Zangla learned the Court had sent Mr. Barboza a letter that he appear in Court there was no need to obtain an Arrest Warrant. (Deposition, Page 36, Lines 24 – 25 and Page 37, Line 2)

RESPONSE: **Undisputed that once Zangla learned the Court had sent Barboza a letter that he appear in Court, Zangla believed there was no need to obtain an Arrest Warrant. Disputed to the extent that the statement incorporates an improper legal conclusion that the belief was justified and that there was no need to obtain an Arrest Warrant.**

24. Once Defendant Zangla knew Mr. Barboza was in the Courtroom, Defendant Zangla spoke with Detective D'Agata of the Village of Liberty Police and asked Detective D'Agata to file a charge. Detective D'Agata said he would. Defendant Zangla also told him what the charge should be. (Deposition, Page 37, Lines 11 – 25; Page 38, Lines 2 – 25; Page 39, Lines 2 – 18; Page 42, Lines 19 – 25; Page 43, Lines 2 – 15; Page 45; Line 8 – 18)

RESPONSE: **Undisputed, except to clarify that Zangla did not merely "ask" D'Agata to file the charge but directed him to draft the accusatory instrument and arrest plaintiff. (Zangla Dep. at 39:5-14) (testifying that D'Agata was drafting the accusatory instrument**

6

"at my direction"), 65:3-6 (testifying that "[D'Agata] filed [the accusatory instrument] because I asked him to"); 65:11-20 (testifying that request to file an accusatory instrument "go hand in hand" with request to arrest); *see also* D'Agata Dep. at 13:12-16; 14:25-15:6 (testifying that as Zangla "told [D'Agata] to do it," D'Agata deemed it a directive) [Exhibit 4 to Bergstein Aff.]; Gorr Dep. at 10:11-17 (D'Agata told Melvin Gorr that Zangla "told him to arrest Mr. Barboza on aggravated harassment") [Exhibit 5 to Bergstein Aff.]; D'Agata Aff. ¶ 11 ("ADA Zangla further advised me that at the time of the calendar call, the plaintiff would be charged with violating this provision of the Penal Law, and that I was to then arrest the plaintiff after he was so charged"); *id.* at ¶ 13 ("Pursuant to the instructions of ADA Zangla, I drafted an Information charging the plaintiff with Aggravated Harassment in the Second Degree").)

25. Defendant Zangla asked Detective D'Agata to draw up the Accusatory Instrument because he had not brought the charge with him and he was not going back to his office in the middle of Court proceedings. (Deposition, Page 39, Lines 24 – 25; Page 40, Lines 2 - 4)

RESPONSE: **Undisputed, except to clarify that Defendant Zangla did not merely "ask" D'Agata to file the charge but directed him to draft the accusatory instrument and arrest plaintiff. *See* Plaintiff's Response to ¶ 24, *supra*.**

26. Defendant Zangla had told Police Officers, in the past, what charges to file against particular individuals. (Deposition, Page 41, Lines 2– 8)

RESPONSE: **Undisputed.**

27. After he was charged Mr. Barboza sent Defendant Zangla a nasty letter wishing Defendant Zangla terminally ill health, a loveless marriage and some other things. Defendant

7

Zangla took the position that Defendant Zangla could not charge Mr. Barboza with any crime for that letter because it is just part of Defendant Zangla's job. (Deposition, Page 48, Lines 5 – 22' Page 50, Lines 12 – 25; Page 51, Lines 2 - 4)

RESPONSE: **Undisputed, except to the extent that the statement implies an improper legal conclusion that that the communication might have constituted criminally chargeable conduct.**

## PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS

Plaintiff offers as counter-statement of material facts the undisputed facts contained in Plaintiff's Rule 56.1 Statement, dated September 19, 2014, paragraphs 1 to 29. In particular, plaintiff emphasizes the following:

1. After plaintiff's payment form was brought to his attention, Justice Brian Rourke of the Town of Liberty Court gave it to Assistant District Attorney Robert Zangla. (Zangla Dep. 15:2-16:8).

2. Zangla received a copy of the September 26, 2012 letter from Justice Rourke to plaintiff in which the Justice ordered plaintiff to appear in person at Liberty Town Court on October 18, 2012. (Plaintiff Decl. ¶ 8, Ex. 3; Zangla Dep. at 31:17-32:2).

3. Zangla did not apply for or obtain an arrest warrant for plaintiff's arrest. (Zangla Dep. at 36:15-17).

4. Zangla directed D'Agata to arrest plaintiff. (Zangla Dep. at 39:5-14 (testifying that D'Agata was drafting the accusatory instrument "at my direction"); 65:3-6 (testifying that "[D'Agata] filed [the accusatory instrument] because I asked him to"); 65:11-20 (testifying that a request to file an accusatory instrument goes "hand in hand" with request to arrest); D'Agata Dep. at 34:24-35 ("The ADA instructed me to [go forward with the arrest]"); *id.* at 43:25-5
8

("When ADA Zangla instructed me to draw up the information, he said that he is in court today and we're going to arrest him"); Gorr Dep. at 10:11-17 (stating that D'Agata told Gorr that "the district attorney's office had told him to arrest Mr. Barboza on aggravated harassment")).

Dated: September 19, 2014

Respectfully submitted,

STEPHEN BERGSTEIN

BERGSTEIN & ULLRICH, LLP
15 Railroad Avenue
Chester, New York 10918
Tel: (845) 469-1277
Fax: (845) 469-5904

*Of counsel:*

MARIKO HIROSE
JORDAN WELLS
COREY STOUGHTON
CHRISTOPHER DUNN

NEW YORK CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300
Fax: (212) 607-3318
*Counsel for Plaintiff*